JOHNSON, Judge.
The plaintiff, M. C. Boat Co., Inc., engaged in the boat towing business, filed this suit against Jack Neilson, Inc., engaged in the same kind of business, to collect $5,554.50 for boat towing services rendered on various dates and at different locations. There was judgment by the Twenty-Fourth Judicial District Court in favor of plaintiff for $4,131.50 and defendant has appealed.
Defendant’s answer denies each allegation of plaintiff’s petition. In the alternative, defendant pleads offset and compensation in the total sum of $3,292.00, made up of seven specific services amounting to that total. Five of these seven jobs, amounting to $1,423.00, are admitted by plaintiff and are not here in dispute. The other two jobs are disputed. One item amounting to $1,231.00 was for repairs made by Boland Machine & Manufacturing Co., Inc., to a United States Navy barge, APL-53, which defendant alleges was damaged by plaintiff. The other item, amounting to $637.50, will be referred to as the Garber Bros. job. At the trial of the case it was stipulated that various claims of plaintiff amounting to $4,131.50 are admitted by defendant and the judgment of the district court was iri that amount with interest. The judgment further decreed: “ * * * that the offset claims of defendant in the amounts of $1,231.00 and $637.50 are dismissed reserving to defendant any right he has to pursue his claim of $637.50 against any party responsible.” Counsel for defendant stated in his brief and argument, without any objection from counsel for plaintiff, that the defendant has actually paid on account of the judgment the sum of $2,263.00 with accrued interest. This payment is not shown in the record; no formal stipulation *909 was made and this court has no authority to consider the payment.
Briefly stated, the facts pertaining to the item of $1,231.00 are that the United States Navy has had for the past two or three years a fleet of vessels tied up “in moth balls” at Port Arthur, Texas. One of those vessels is designated as APL-53, a barge-type houseboat formerly used for housing sailors. The Navy desired to modernize that barge by installing air conditioning and generally up-dating it to make it suitable for housing men for atomic submarine crews. The general contract for this conversion of chat vessel amounts to something over $300,000.00. Preparatory to calling for bids for that work the Navy sent inspectors and estimators to inspect the barge and draw the necessary specifications. This was done some two or three months before bidding time. Desiring to submit a bid, Boland Machine & Manufacturing Co., Inc., sent its Terrell Barrios to Texas about a week before the bidding date to inspect the vessel and check each item of the Navy specifications of work. He then added the prices which made up Boland’s bid. The Navy contract was in due time awarded to Boland.
Someone for Boland contacted defendant and made arrangements for defendant to tow the Navy vessel from Texas to Bo-land’s shipyard on the Industrial Canal at New Orleans. In turn, Cliff Spanier, an employee of defendant, made arrangements with Oscar Mafouz, plaintiff’s office manager and dispatcher, for plaintiff to move this vessel for defendant with plaintiff’s tug, the John Thomas. After the APL-53 was delivered to Boland’s dock, one of the Navy inspectors informed Joseph P. Ruppel, Boland’s general superintendent, about some damage to the Navy barge. Ruppel wrote a letter to defendant on May 21, 1963, informing defendant of the damage and calling upon defendant to send someone to survey the damage for the purpose of having the damage repaired. Boland waited about two weeks but nobody came to inspect the damage and Boland made the survey and repaired the damage at the cost of $1,231.00, which they charged to defendant on the assumption that the damage was caused while the vessel was in tow. Defendant having been employed by Boland to make the tow, Boland looked to defendant to pay for the repairs. The agreed price between Boland and defendant for towing the vessel from Texas to New Orleans was $3,600.00. After the repairs of the damage to the vessel were made Boland deducted the $1,231.00 and paid to defendant the difference. Defendant is now seeking to recover the amount from plaintiff on the assumption that the vessel was in charge and possession of the plaintiff when the damage was done.
The only testimony connecting this plaintiff with the damage to the vessel referred to is a possible statement made by plaintiff’s dispatcher, Oscar Mafouz, who is quoted by Cliff Spanier as saying that somebody told him (Mafouz) that the vessel was damaged coming through the Vermillion locks en route from Texas to New Orleans. Mafouz testified that he has no recollection of making any such statement but if Spanier says he made it he would not deny it. While that is tantamount to an admission, it is not worthy of consideration because Mafouz was not aboard the tug or the Navy vessel on the trip and he says he knows nothing about the damage. Barrios said that when he made the inspection of the Navy barge for Boland at Port Arthur, he did not pay any attention to anything about the condition of the ship except as to the items of work to be done as listed on the Navy specifications. Therefore, Barrios could not say positively whether the damage to the barge now referred to was present when he inspected the barge for Boland about a week before making Boland’s bid for the contract. It would have been an easy matter to interview the operators of the Vermillion locks, but this was not done. The Navy inspectors who made up the specifications for the general contract about two or three *910 months before time for bidding were not called for questioning about the vessel’s condition when they made its original survey for the Navy. Defendant was notified by letter as soon as the damage was discovered at Boland’s dock. Defendant made no move to find out how or when the damage was done. Counsel for defendant contends that this court must assume that the damage was done while the vessel was in tow by plaintiff. The whole testimony with reference to this episode is nebulous and entirely unconvincing. It is not sufficient to form the basis for such an assumption in law as counsel would have this court make. Counsel also cites a number of maritime and other authorities where the person who made the tow of the damaged vessel was held liable for damages incurred while the vessel was in that person’s possession. In those cases the proof of the facts as to possession at the time the damage of the vessels under tow was done is certain and definite. In this case there are too many uncertainties. There is not one word of positive testimony to indicate, much less to prove, any fault or negligence on the part of this plaintiff. The amount of the damage was not great. It could have been done prior to plaintiff’s taking possession. It could have been done after it was tied up at Boland’s dock. None of plaintiff’s employees who were on the vessel throughout the towing were questioned. If the vessel were damaged in negotiating the locks, the fault could have been on the part of someone other than plaintiff — for instance, the operators of the locks. We cannot base a finding of fault and negligence on the part of plaintiff without convincing proof that the vessel was in plaintiff’s possession when the damage occurred, and we do not have it in this case. The trial court was correct in dismissing defendant’s claim for offset of this item of $1,231.00.
With respect to defendant’s claim of offset of $637.50, defendant, attempted to prove this claim by a letter written by David Thomas, an employee of Garber Bros., to counsel for defendant. Thomas admitted writing and signing the letter but testified that he had no knowledge of the information contained in the letter and that he simply was repeating what one Kenneth Garver had told him. Counsel for defendant offered the letter in evidence. Counsel for plaintiff objected to this testimony and to the letter as being inadmissible because the contents of the letter is hearsay insofar as this witness is concerned. The trial court sustained the objection. Counsel for plaintiff made a proffer of proof in accordance with Article 1636, C.C.P., and the letter is filed in the record as Neilson-6. We agree with the ruling of the trial court and there is no proof to support defendant’s claim for offset of the item in the sum of $637.50. In this connection counsel for defendant made a statement in the record that defendant has filed a suit to collect this claim against this plaintiff and Garber Bros, in the District Court for St. Mary Parish, Louisiana, which suit is now pending. As we noted hereinabove the trial court in its judgment in this case reserved to defendant any right defendant may have to pursue this claim elsewhere. Counsel for plaintiff filed a plea of prescription and peremptory exception of no cause or right of action on which the trial court made no ruling. These matters have not been presented to this court on this appeal.
The judgment appealed from is therefore affirmed with costs to be paid by defendant-appellant.
Affirmed.